RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York  11556-0926
Telephone: (516) 357-3000
Facsimile: (516) 357-3333
Matthew V. Spero, Esq.

*Attorneys for Kapitus, LLC*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>IMRAN HAIDER,<br><br>　　　　　　　　　Debtor. | Chapter 7<br><br>Case No.:   21-71211-AST |

### *EX PARTE* MOTION OF KAPITUS, LLC FOR AN ORDER DIRECTING THE DEBTOR AND US LIMO SYSTEM, INC. TO PRODUCE DOCUMENTS AND APPEAR FOR EXAMINATION PURSUANT TO BANKRUPTCY RULE 2004

Kapitus, LLC ("Kapitus"), by and through its counsel, RIVKIN RADLER LLP, hereby submits this motion (the "Motion") for entry of an order under Rule 2004 of the Federal Rules of Bankruptcy Procedure Directing the Debtor and US Limo System, Inc. ("US Limo") to produce documents and appear for examination pursuant to Bankruptcy Rule 2004 (the "Motion").  In support of the Motion, Kapitus respectfully represents as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are § 105(a) of the Bankruptcy Code and Bankruptcy Rule 2004.

## BACKGROUND

3. On or about March 2, 2020, Debtor, in his capacity as officer/owner/director/ member/manager of U.S. Limo System Inc. ("US Limo"), executed a Future Receivables Factoring Agreement (ACH) (the "Agreement") with Kapitus.

4. The Agreement is attached hereto as "Exhibit A".

5. At the same time the Agreement was executed, Debtor also executed a Security Agreement and Guaranty (hereinafter "Guaranty") in his official capacity as an officer/owner/director/member/manager of US Limo, and also personally and individually as a Guarantor, whereby he personally guaranteed that he would not take any action, nor permit US Limo to take any action, that would breach the Agreement.

6. The Guaranty is attached as "Exhibit B".

7. The Agreement provides for the purchase and sale of US Limo's future receivables. Specifically, in exchange for an upfront advance of One Hundred Twenty Thousand Dollars ($120,000.00), Kapitus would be entitled to US Limo's future receivables in the amount of One Hundred Seventy Thousand Four Hundred Dollars ($170,400.00).

8. Under the terms of the Agreement, US Limo authorized Kapitus to collect the purchased receivables by withdrawing ACH (Automatic Clearing House) payments from US Limo's bank account in the weekly amount of Two Thousand Six Hundred Twenty-Four Dollars ($2,624.00).

9. On or about March 4, 2020, Kapitus fulfilled its obligations under the Agreement by advancing the specified amount to US Limo, less any fees.

10. As of December 10, 2020, US Limo made total payments of Sixteen Thousand Ninety-Four Dollars and 40/100 ($16,094.40) to Kapitus.

11.     Between April 28, 2020 and June 22, 2020, three (3) ACH payments did not clear (i.e. were rejected) and as a result, Kapitus charged US Limo a $275.00 fee for each failed transaction under the terms of Appendix A of the Guaranty for a total of Eight Hundred Twenty-Five Dollars ($825.00).

12.     Upon information and belief, one or more of the above-referenced transactions did not clear because US Limo and/or Debtor knowingly and intentionally issued a "stop payment" or similar account block so as to cut Kapitus off from debiting the account.

13.     The last payment made by US Limo was in the amount of Two Hundred Dollars ($200.00) on September 9, 2020; therefore, pursuant to paragraph 3.1 of the Agreement, US Limo is in Default of the Agreement.

14.     Pursuant to Appendix A of the Guaranty, in the event US Limo defaults under the Agreement, a Default Fee of Two Thousand Five Hundred Dollars ($2,500.00) is assessed to the account.

15.     As of December 10, 2020, Debtor and US Limo owe Kapitus the principal amount of not less than One Hundred Fifty-Four Thousand Three Hundred Five Dollars and 60/100 ($154,305.60), plus a Default Fee of Two Thousand Five Hundred Dollars ($2,500.00), and Eight Hundred Twenty-Five Dollars ($825.00) in returned ACH fees, for a total balance of One Hundred Fifty-Seven Thousand Six Hundred Thirty Dollars and 60/100 ($157,630.60).

16.     Under paragraph 3.3 of the Agreement, Debtor and US Limo are also liable to Kapitus for court costs and for attorneys' fees equal to twenty-five percent (25%) of any balance due, which here amounts to Thirty-Nine Thousand Four Hundred Seven Dollars and 65/100 ($39,407.65).

17.     Therefore, Debtor and US Limo, jointly and severally, are indebted to Kapitus in the amount of One Hundred Fifty-Seven Thousand Six Hundred Thirty Dollars and 60/100 ($157,630.60), plus attorneys' fees in the amount of Thirty-Nine Thousand Four Hundred Seven Dollars and 65/100 ($39,407.65).

18.     The Debtor's own Schedule E/F lists Kapitus as an <u>undisputed</u> creditor with a claim of $155,000 (see ECF no. 14-4, Schedule E/F at 4.1).

19.     Kapitus is entitled to examine the Debtor and US Limo about, among other things, the facts and circumstances surrounding the monies provided to US Limo under the Agreement, the aforementioned stop payment, and the status of US Limo – which is in serious question as a result of the Debtor's Schedule A/B (sworn to under the penalties of perjury) which states that the Debtor owns no non-public stock or interests in businesses or LLCs (see ECF no. 14-1, Schedule A/B at no. 19), even though a search of the New York State Department of State website indicates that US Limo is an active entity and that the Debtor is its Chief Executive Officer.  See Ex. "C" annexed hereto.  Upon information and belief, the Debtor is the sole shareholder and officer of US Limo.

## LEGAL ARGUMENT

20.     Federal Rule of Bankruptcy Procedure 2004 provides in relevant part as follows:

> (a)     *Examination on Motion*.  On motion of any party in interest, the court may order the examination of any entity.
>
> (b)     *Scope of Examination*.  The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate . . .

>   (c) *Compelling attendance and production of documentary evidence.* The attendance of an entity for examination and for the production of documents, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial. As an officer of the court, an attorney may issue and sign a subpoena on behalf of the court for the district in which the examination is to be held if the attorney is admitted to practice in that court or in the court in which the case is pending.

21. A Rule 2004 Examination is unfettered and broad. *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002). The examination is legitimately in the nature of a "fishing expedition." *In re Duratech Indus.*, 241 B.R. 283, 289 (Bankr. E.D.N.Y. 1999). Courts may grant requests for Rule 2004 examinations so "that the rights of creditors may be preserved." *In re Coffee Covered, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991).

22. The examinations sought herein fall squarely within Rule 2004's scope as the subject matter of the examination includes matters relating to the property and assets of the estate, the acts, conduct and transfers made by the Debtor, the financial condition of the Debtor, and other matters impacting the administration of the Debtor's estate. The Debtor and US Limo have unique knowledge concerning the Debtor's pre-petition activity. This is precisely the type of information that parties are entitled to under Rule 2004. Kapitus does not believe that any of the information sought by it is subject to any attorney-client privilege.

23. Notice of this Motion has been given to all parties who have appeared in this case via electronic filing on the Court's ECF website. Kapitus has made no prior requests for the relief sought herein to this Court or any other court. Kapitus respectfully requests that the Court waive any requirement of a separate memorandum of law, as necessary supporting legal authority and

the factual grounds for the relief requested herein are in accordance with E.D.N.Y. LBR 9013-1(a).

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, Kapitus respectfully requests that this Court enter the attached Order directing the Debtor and US Limo to produce documents and to appear at an examination pursuant to Bankruptcy Rule 2004, and grant such other and further relief as this Court deems just and proper.

Dated: Uniondale, New York
October 18, 2021

        RIVKIN RADLER LLP
        *Attorneys for Kapitus LLC*

By:   /s/ Matthew V. Spero
      Matthew V. Spero, Esq.
      926 RXR Plaza
      Uniondale, New York  11556-0926
      (516) 357-3000
      matthew.spero@rivkin.com

5539737 v1