# EXHIBIT B

## SECURITY AGREEMENT AND GUARANTY

Merchant's Legal Name: US LIMO SYSTEM, INC.

D/B/A: US Limo System

Physical Address: 17 Cumberland St         City: Brooklyn         State: NY         Zip: 11205-1039

Federal ID# ███████

### SECURITY AGREEMENT

**Security Interest.** To secure Merchant's payment and performance obligations to PURCHASER under the Future Receivable Factoring Agreement between Merchant and PURCHASER (the "Merchant Agreement"), Merchant hereby grants to PURCHASER a security interest in all accounts, accounts receivable, contracts, real property leases, notes, bills, acceptances, chooses in action, chattel paper, instruments, documents and other forms of obligations at any time owing to the Merchant arising out of goods sold or leased or for services rendered by Merchant, the proceeds thereof and all of Merchant's rights with respect to any goods represented thereby, whether or not delivered, goods returned by customers and all rights as an unpaid vendor or lienor, including rights of stoppage in transit and of recovering possession by proceedings including replevin and reclamation, together with all customer lists, books and records, ledger and account cards, computer tapes, software, disks, printouts and records, whether now in existence or hereafter created, relating thereto (collectively referred to hereinafter as "Receivables"); (ii) all inventory, including without limitation, all goods manufactured or acquired for sale or lease, and any piece goods, raw materials, work in process and finished merchandise, findings or component materials, and all supplies, goods, incidentals, office supplies, packaging materials and any and all items used or consumed in the operation of the business of Merchant or which may contribute to the finished product or to the sale, promotion and shipment thereof, in which Merchant now or at any time hereafter may have an interest, whether or not the same is in transit or in the constructive, actual or exclusive occupancy or possession of Merchant or is held by Merchant or by others for Merchant's account (collectively referred to hereinafter as "Inventory"); (iii) goods, including without limitation, all machinery, equipment, parts, supplies, apparatus, appliances, tools, fittings, furniture, furnishings, fixtures and articles of tangible personal property of every description now or hereafter owned by the Grantor or in which Grantor may have or may hereafter acquire any interest, at any location (collectively referred to hereinafter as "Equipment"); (iv) general intangibles in which the Merchant now has or hereafter acquires any rights, including but not limited to, causes of action, corporate or business records, inventions, designs, patents, patent applications, trademarks, trademark registrations and applications therefor, goodwill, trade names, trade secrets, trade processes, copyrights, copyright registrations and applications therefor, licenses, permits, franchises, customer lists, computer programs, all claims under guaranties, tax refund claims, rights and claims against carriers and shippers, leases, claims under insurance policies, all rights to indemnification and all other intangible personal property and intellectual property of every kind and nature (collectively referred to hereinafter as "Intangibles"); (v) All the capital stock, bonds, notes, partnership interests, member interests in limited liability companies, and other securities, if any, held of record or beneficially by the Merchant, including without limitation the capital stock of all subsidiaries of the Merchant, and the Merchant's interests in all securities brokerage accounts (collectively referred to hereinafter as "Investments"); (vi) all cash on hand and on deposit in banks, trust companies and similar institutions, and all property accounted for in the Merchant's financial statements as "cash equivalents" (collectively referred to hereinafter as "Cash"); (vii) all other assets, proceeds and items not directly referred to herein as those terms are defined in Article 9 of the Uniform Commercial Code under applicable federal and state law (collectively referred to hereinafter as "UCC Article 9 Items"); (viii) all accessions to, substitutions for, and all replacements, products and proceeds of the Receivables, Inventory, Equipment, Intangibles, Investments, Cash and UCC Article 9 Items (collectively referred to hereinafter as "Collateral"), including without limitation proceeds of insurance policies insuring the Collateral; and (ix) Books and records relating to any of the Collateral (including without limitation, customer data, credit files, computer programs, printouts, and other computer materials and records of the Merchant pertaining to any of the Collateral), whether now or hereafter owned or acquired by Merchant and wherever located; and all proceeds of the foregoing. If the Merchant Agreement identifies more than one Merchant, this Security Agreement applies to each Merchant, jointly and severally.

Merchant acknowledges and agrees that any security interest granted to PURCHASER under any other agreement between Merchant and PURCHASER will secure the obligations hereunder, and that the Merchant's payment and performance obligations secured by this Security Agreement, and the Collateral granted hereunder, shall be perfected under any previously filed UCC-1 or UCC-3 statement, perfecting PURCHASER's interest in the Collateral.

Merchant further acknowledges and agrees that, if Merchant enters into future Agreements with PURCHASER, any security interest granted to PURCHASER under such future Agreements will relate back to this Security Agreement, and that the Merchant's payment and performance obligations, and the Collateral granted, under such future Agreements, shall relate back to, be perfected under, and made a part of, any previously filed UCC-1 or UCC-3 statement, perfecting PURCHASER's interest in the Collateral.

**Cross-Collateral.** To secure the payment and performance obligations to PURCHASER (and the PURCHASERs) under this Merchant Security Agreement and Guaranty (this "**Agreement**"), Merchant and each Guarantor hereby grants PURCHASER, for itself and its participants, a security interest in the collateral set forth in the Addendum to the Security Agreement and Guarantee  (the "**Additional Collateral**"). Each Guarantor agrees and acknowledges that PURCHASER will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement.

Guarantor acknowledges and agrees that any security interest granted to PURCHASER under any other agreement between Guarantor and PURCHASER will secure the obligations hereunder, and that the Guarantor's payment and performance obligations under this Agreement, and the Additional Collateral granted hereunder, shall be perfected under any previously filed UCC-1 or UCC-3 statement, perfecting PURCHASER's interest in the Additional Collateral.

Guarantor further acknowledges and agrees that, if Guarantor enters into future Agreements with PURCHASER, any security interest granted to PURCHASER under such future Agreements will relate back to this Agreement, and that the Guarantor's payment and performance obligations, and the Additional Collateral granted, under such future Agreements, shall relate back to, be perfected under, and made a part of, any previously filed UCC-1 or UCC-3 statement, perfecting PURCHASER's interesting the Additional Collateral.

Each of Merchant and each Guarantor agrees to execute any documents or take any action in connection with this Agreement as PURCHASER deems necessary to perfect or maintain PURCHASER's first priority security interest in the Collateral and Additional Collateral, including the execution of any control agreements.  Each of Merchant and each Guarantor hereby authorizes PURCHASER to file any financing statements deemed necessary by PURCHASER to perfect or maintain PURCHASER's security interest, which financing statements may contain notification that Merchant and each Guarantor have granted a negative pledge to PURCHASER with respect to the Collateral and Additional Collateral, and that any subsequent lender or lienor may be tortiously interfering with PURCHASER's rights.  Merchant and each Guarantor shall be jointly and severally liable for and shall pay to PURCHASER upon demand all costs and expenses, including but not limited to attorneys' fees, which may be incurred by PURCHASER in protecting, preserving and enforcing PURCHASER's security interest and rights.

**Negative Pledge.** Merchant and each Guarantor agrees not to create, incur, assume, or permit to exist, directly or indirectly, any additional financings, loans, lien or other encumbrance of any kind on or with respect to any of the Collateral or Additional Collateral, as applicable without written permission of PURCHASER.

**Consent to Enter Premises and Assign Lease.** PURCHASER shall have the right to cure Merchant's default in the payment of rent for the Premises on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, PURCHASER may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that PURCHASER may enter into an agreement with Merchant's landlord giving PURCHASER the right: (a) to enter the Premises and to take possession of the fixtures, equipment and other Collateral therein for the purpose of protecting and preserving same; and (b) to assign Merchant's lease to another qualified merchant capable of operating a business comparable to Merchant's at the Premises.

**Remedies.** Upon any Event of Default, PURCHASER may pursue any remedy available at law (including those available under the provisions of the UCC) or in equity to collect, enforce, or satisfy any obligations then owing to PURCHASER, whether by acceleration or otherwise.

## GUARANTY

**Personal Guaranty of Performance.** The undersigned Guarantor(s) hereby guarantees to PURCHASER Merchant's performance of all of the representations, warranties, covenants made by Merchant in this Agreement and the Merchant Agreement, as each agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due (i) at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in this Agreement and the Merchant Agreement, and (ii) if within 120 days Merchant admits its inability to pay its debts, or makes a general assignment for the benefit of creditors, or any proceeding shall be instituted by or against Merchant seeking to adjudicate it bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts. (It is understood by all parties that Guarantors are only guaranteeing that they will not take any action or permit the merchant to take any action that is a breach of this agreement.)

**Guarantor Waivers.** In the event that Merchant fails to make a payment or perform any obligation due to Guarantor's actions or malfeasance under the Merchant Agreement, PURCHASER may enforce its rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral, Additional Collateral or Cross-Collateral PURCHASER may hold pursuant to this Agreement or any other guaranty.

PURCHASER does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of: (i) Merchant's failure to pay timely any amount owed under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; (iv) PURCHASER's acceptance of this Agreement ; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to PURCHASER. In addition, PURCHASER may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to PURCHASER; (ii) release Merchant from its obligations to PURCHASER; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Purchased Amount plus any accrued but unpaid interest and Merchant's other obligations to PURCHASER under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement including without limitation under the following rights and remedies: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that PURCHASER must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

**Guarantor Acknowledgement.** Guarantor acknowledges that: (i) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iii) He/She has consulted with counsel of his/her choice or has decided not to avail himself/herself of that opportunity.

INITIALS: 

**Joint and Several Liability.** The obligations hereunder of the persons or entities constituting Guarantor under this Agreement are joint and several.

---

**Consent to Receive Autodialed and Prerecorded Calls and Messages.** PURCHASER, Kapitus Servicing, Inc., as servicer, and their subsidiaries and affiliates (collectively, Kapitus) may from time to time notify Merchant(s), and Owner(s) of various promotional offers and other marketing information, or contact Merchant(s) and Owners(s) in connection with the servicing of this Agreement, or in connection with any default under this Agreement. By signing this Agreement, Merchant(s), and Owner(s) expressly consent and authorize Kapitus to call, send text messages, and/or send other electronic messages (including prerecorded or artificial voice messages) using an automatic telephone dialing system to any telephone number provided by Merchant(s) and Owner(s) in this Agreement or corresponding administrative form or any other applications for funding, including cellular phone numbers and landlines, regardless of their inclusion on any do not call list for purposes of servicing, collections, marketing, or promoting any product offered by Kapitus.

Please note that Merchant(s) and Owner(s) are not required to consent to this section of this Agreement in order to qualify or obtain any products or services from Kapitus. If you do not agree to be called for marketing or promotional purposes please call (844) 547-9396 or email DNC@kapitus.com

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", ARE HEREBY INCORPORATED IN FULL AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANINGS SET FORTH IN THE MERCHANT AGREEMENT.

MERCHANTS AND OWNERS/GUARANTORS ACKNOWLEDGE THAT THIS WRITING REPRESENTS THE ENTIRE AGREEMENT BETWEEN THE PARTIES HERETO. IT IS UNDERSTOOD THAT ANY REPRESENTATIONS OR ALLEGED PROMISES BY INDEPENDENT BROKERS OR AGENTS OF ANY PARTY IF NOT INCLUDED IN THIS WRITTEN AGREEMENT ARE CONSIDERED NULL AND VOID. ANY MODIFICATION OR OTHER ALTERATION TO THE AGREEMENT MUST BE IN WRITING AND EXECUTED BY THE PARTIES TO THIS CONTRACT.

**MERCHANT**

By     Imran Haider                                              DocuSigned by: Imran Haider   C0DE6F1253614D3...   (Signature)
           (Print Name and Title)

**OWNER/GUARANTOR #1**

By     Imran Haider                                              DocuSigned by: Imran Haider   C0DE6F1253614D3...   (Signature)
           (Print Name)

**OWNER/GUARANTOR #2**

By     N/A                                                                                                                         (Signature)
           (Print Name)